UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------x
UNITED STATES OF AMERICA and the :  FILED UNDER SEAL PURSUANT TO
THE COMMONWEALTH OF              :  31 U.S.C. § 3730(b)(2)
MASSACHUSETTS *ex rel.* JOHN DOE,
                                 :  CIVIL ACTION NO:
            Plaintiffs,
                                 :  18-cv-_____
     vs.
                                 :  *FILED IN CAMERA*
MASSACHUSETTS EYE AND EAR           *and UNDER SEAL*
INFIRMARY, MASSACHUSETTS         :     *pursuant to*
EYE AND EAR ASSOCIATES, INC.,       *31 U.S.C. § 3730(b)(2)*
and THE FOUNDATION OF THE        :
MASSACHUSETTS EYE AND EAR
INFIRMARY, INC.,                 :  JURY TRIAL DEMANDED
            Defendants.
---------------------------------------------------------x

## COMPLAINT OF PLAINTIFF-RELATOR

On behalf of the United States of America pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), and on behalf of the Commonwealth of Massachusetts pursuant to the Massachusetts False Claims Act, Mass. Gen. Laws Ann. Chap. 12 § 5A, *et seq.* Plaintiff-Relator John Doe ("Relator") files this *qui tam* Complaint for treble damages and civil money penalties against defendants Massachusetts Eye and Ear Infirmary, Massachusetts Eye and Ear Associates, Inc., and The Foundation of the Massachusetts Eye and Ear Infirmary, Inc. (collectively "Defendants"). These claims arise out of the Defendants' illegal billing for endoscopy procedures that Defendants did not perform which has resulted in the submission of false and fraudulent claims for payment to the United States and Massachusetts as set forth below. In support of these claims, Relator alleges as follows:

1

I. **INTRODUCTION**

1. Defendants have, at all relevant times continuing until the present day, submitted false claims to Medicare and other government funded health insurance programs by submitting claims for reimbursement for Anterior Rhinoscopy evaluations using CPT Code 31231, which should be used only for Nasal Endoscopies, a procedure distinct and more complicated than the more simple and basic anterior rhinoscopy. According to defendants, "the anterior rhinoscopy and nasal endoscopy are the same type of exams." While both refer to examinations of patients' noses, one exam uses simple instruments such as an otoscope to examine the anterior surfaces of the nose, and the other uses an endoscope to insert a rigid or flexible tube into the patient to examine the inside of the nose and sinuses. Anterior rhinoscopy does not use an endoscope and does not examine deep into the nose or the sinuses. Defendants' use of CPT Code 31231 to bill for Anterior Rhinoscopy procedures constitutes the use of false statements to get false claims paid.

II. **THE PARTIES**

    A. **Plaintiff-Relator**

2. Plaintiff-Relator John Doe is an individual citizen of the State of New Hampshire.

3. In 2017, Relator had two visits at Defendants' clinic for treatment for a chronic sinus condition. Following the second visit, Defendants submitted a claim for payment for a procedure that the treating physician did not perform. Although Relator objected to being billed for a procedure that Defendants admit the treating physician did not perform, Defendants have persisted in claiming they are entitled to payment for the phantom procedure. During the course of his communications with Defendants, Relator learned that Defendants also bill at least one, if not all government health insurance programs for such phantom procedures.

### B. Defendants

4. Massachusetts Eye and Ear Infirmary (the "Infirmary") is a not-for-profit teaching hospital conducting patient care and research, located at 243 Charles Street, Boston, Massachusetts 02114. The Infirmary is a teaching hospital of Harvard Medical School. It is part of a system of related entities that provide specialized medical care collectively known as Massachusetts Eye and Ear Infirmary.

5. Massachusetts Eye and Ear Associates, Inc. ("Associates") is a not-for-profit corporation, located at 243 Charles Street, Boston, Massachusetts 02114, which provides physician services primarily to patients at the Infirmary. The Infirmary and Associates operate clinical practices in surrounding communities including, but not limited to, Braintree, Bridgewater, Concord, East Quincy, Medford, Plainville, and Stoneham, Massachusetts.

6. The Foundation of the Massachusetts Eye and Ear Infirmary, Inc. ("Foundation"), located at 243 Charles Street, Boston, Massachusetts 02114, is the parent corporation for a group of controlled organizations which consists of the Infirmary, the Associates and several other entities not relevant here.

## III. JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this case pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331 and 1345. The Court has supplemental jurisdiction over the Massachusetts False Claims Act state law claims pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b).

8. Venue is proper in this judicial district pursuant to 31 U.S.C. § 3732(a) and/or 28 U.S.C. § 1391(b).

9. This Court has personal jurisdiction over the Defendants under 31 U.S.C. § 3732(a) because the Defendants transact business and submitted false or fraudulent claims directly or indirectly to the federal government in this judicial district.

10. Relator has direct and independent knowledge on which the allegations are based, is an original source of this information to the United States and Massachusetts, and he has voluntarily provided the information to the United States before filing this action based on the information.

11. This suit is not based on prior public disclosures of allegations or transactions in a criminal, civil or administrative hearing, lawsuit, investigation, audit or report, or from the news media. To the extent that there has been any public disclosure unknown to Relator, he is an original source under 31 U.S.C. § 3730(e)(4).

## IV. AFFECTED FEDERAL HEALTH CARE PROGRAMS

### A. Medicare

12. Medicare is a federal health insurance system for people 65 and older and for people under 65 with certain disabilities. Medicare Part A provides hospital insurance for eligible individuals. See 42 U.S.C. §§1395c-1395i. Medicare Part B is a voluntary subscription program of supplementary medical insurance covering outpatient items and services. See 42 U.S.C. § 1395k(a)(2)(B).

13. The threshold for Medicare Part B coverage is set forth in 42 U.S.C. § 1395y(a)(1)(A), which states that "[n]o payment may be made… for any expenses incurred for items or services which… are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."

**B.     Medicaid**

14.     Medicaid programs in accordance with Federal regulations. State Medicaid agencies conduct their programs according to a Medicaid State plan approved by the Center for Medicare & Medicaid Services ("CMS"). Those state agencies pay providers for medical care and services provided to eligible Medicaid recipients. Providers that wish to participate in the Medicaid program must agree to comply with certain requirements specified in a provider agreement.

15.     While Medicaid programs are administered by the States, they are jointly financed by the Federal and State governments. The Federal Government pays its share of medical assistance expenditures to the State on a quarterly basis according to statements of expenditures submitted by the State and a formula used to calculate how much of the total reported expenditures the Federal Government will reimburse the State, as described in sections 1903 [42 U.S.C. § 1396b] and 1905(b) [42 U.S.C. § 1396d(b)] of the Medicaid Act. The amount of the federal share of medical assistance expenditures is called Federal Financial Participation ("FFP"). The State pays its share of medical assistance expenditures from state and local government funds in accordance with the requirements of section 1902(a)(2) [42 U.S.C. § 1396a(a)(2)] of the Medicaid Act. Different levels of federal funding are provided to different States, depending on need. The precise level of federal funding for each State calculated by the Federal Government each federal fiscal year.

C. **Other Federal Health Care Programs**

16. The federal government administers other health care programs including, but not limited to, TRICARE, CHAMPVA, and the Federal Employee Health Benefit Program.

17. TRICARE, administered by the United States Department of Defense, is a health care program for individuals and dependents affiliated with the armed forces.

18. CHAMPVA, administered by the United States Department of Veterans Affairs, is a health care program for the families of veterans with 100 percent service-connected disability.

19. The Federal Employee Health Benefit Program, administered by the United States Office of Personnel Management, provides health insurance for federal employees, retirees, and survivors.

20. Medicare, Medicaid and the other federal health care programs listed above will collectively be referred to herein as "government health care programs."

V. **THE UNITED STATES FALSE CLAIMS ACT ("FCA")**

21. The United States False Claims Act prohibits the submission of false or fraudulent claims and false statements in order to obtain or keep federal money. It provides, in pertinent part:

> (1) In general.— Subject to paragraph (2), any person who—
>
> (A)  knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B)  knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> * * *
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil

Penalties Inflation Adjustment Act of 1990 . . ., plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

22. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes), the amounts for civil penalties were adjusted from $ 5,500 to $ 11,000 for violations occurring on or before July 31, 2016; $10,781 to $21,563 for violations occurring from August 1, 2016 to December 31, 2016; $10,957 to $21,916 for violations occurring from January 1, 2017 to December 31, 2017; and $11,181 to $22,363 for violations occurring on or after January 1, 2018.

## VI. DIAGNOSTIC NASAL ENDOSCOPY AND ANTERIOR RHINOSCOPY

22. Otolaryngology is a medical specialty focused on the ears, nose, and throat. It is also called otolaryngology-head and neck surgery because specialists are trained in both medicine and surgery. Otolaryngologists commonly perform nasal endoscopy (CPT Code 31231), a diagnostic procedure that allows for visual inspection of patients' sinuses. This is performed, typically in the office, using rigid or flexible endoscopes.

23. Defendants submitted false claims for reimbursement using CPT Code 31231, "Nasal/sinus endoscopy" when the treating physician did not perform "nasal/sinus endoscopy" but simply performed "anterior rhinoscopy" without the medical need for or use of an endoscope. "Anterior rhinoscopy" refers to inspection of the anterior portion of the nasal cavity with or without the aid of a nasal speculum. In cases where anterior rhinoscopy only was performed and an endoscope was not used, Defendants could only seek reimbursement for an Evaluation and Management examination using CPT Code 99213, for example.

24. CPT Code 31231 is defined as "Nasal endoscopy, diagnostic, unilateral or bilateral (separate procedure)." The CPT codebook for codes 31231-31235 refers "to **employing**

7

**a nasal/sinus endoscope** to the interior of the nasal cavity and the middle and superior meatus, the turbinates and the spheno-ethmoid recess." (Emphasis added.)

25. According to the Centers for Medicare and Medicaid Services, Department of Health and Human Services, for an examination to qualify for reimbursement using CPT Code 31231, the procedure must involve the use of an endoscope.

> Nasal endoscopy is an examination of the inside of the nose and/or sinuses performed with direct vision using a rigid nasal endoscope and/or a flexible fiberoptic endoscope.

*See* Medicare Quarterly Provider Compliance Newsletter, Guidance to Address Billing Errors, Centers for Medicare & Medicaid Services, Department of Health and Human Services, Vol. 5, Issue 4, page 4 (July 2015), *available at* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/MedQtrlyComp-Newsletter-ICN909220.pdf.

26. The American Rhinologic Society's (ARS) position statement for CPT Code 31231, "Nasal Endoscopy," distinguishes the nasal endoscopy from the anterior rhinoscopy.

> Diagnostic nasal endoscopy is a procedure performed to better characterize the anatomy of the nasal cavity and/or paranasal sinuses and to identify sinonasal pathology **not afforded by anterior rhinoscopy**. It is typically performed in the office setting using rigid or flexible endoscopes, often, but not always with topical decongestion and/or anesthesia, though can be performed in the operating room as well.

(Emphasis added.), available at http://care.american-rhinologic.org/nasal_endoscopy.

27. A Local Coverage Determinations by a Medicare carrier states that a procedure billable under CPT Code 31231 requires the use of an endoscope.

> A diagnostic nasal endoscopic examination permits visualization of upper airway structures inaccessible to the conventional otoscope or nasal speculum. The endoscopic examination is a safe and rapid (10-15 minutes) procedure used to diagnose nasal and/or sinus pathologic

> conditions **and is performed with a rigid nasal endoscope and/or a flexible endoscope.**

*See* Diagnostic Nasal Endoscopy, Indications and Limitations of Coverage and/or Medical Necessity, First Coast Service Options MAC – Part B Local Coverage Determination, page 2 (Oct. 1, 2015), available at https://medicare.fcso.com/lcd/active/l33815.pdf (emphasis added).

## VII. DEFENDANTS' CONDUCT IN VIOLATION OF THE FCA

28. The facts that form the basis for Relator's allegation are the following.

29. On September 28, 2017, Relator, suffering from chronic sinusitis, was treated by Dr. #1 at the Infirmary. After conducting an anterior rhinoscopy using only an otoscope, the Dr. performed a nasal endoscopy using a long flexible tube and a scope to look into his nasal cavity. Based on this examination, Dr. #1 provided Relator a prescription for a nasal spray and other therapy.

30. On November 3, 2017, when Relator had a follow up appointment with Dr. #1, Relator reported that the nasal spray and therapy had reduced the symptoms of his sinusitis. Dr. #1 felt the glands in Relator's neck and performed an anterior rhinoscopy by simply looking into Relator's nose with an otoscope. Dr. #1 did not use the endoscope instrument that he used during Relator's visit on September 28, 2017. Dr. #1 agreed that no further treatment was necessary.

31. According to Relator's medical chart for the September 28, 2017 visit, Dr. #1 performed an "Anterior Rhinoscopy" that revealed a "[s]eptal deviation to the right approximately 85% obstructing." Dr. #1 stated his "plan is for nasal endoscopy to better visualize the nasal cavity and sinus drainage areas." His note then states: "Nasal Endoscopy" Without spraying the nasal cavity . . . a rigid endoscopy was performed using a thirty degree endoscope."

32. According to Relator's medical chart for the November 3, 2017 visit, Dr. #1 conducted a physical exam including "Anterior rhinoscopy reveals septal deviation . . .." The medical chart does not state that Dr. #1 performed a "Nasal Endoscopy" on November 3, 2017, unlike the medical chart for the September 28, 2017 visit.

33. Following the November 3, 2017 visit, Relator received the Explanation of Benefits from his health insurer, CareFirst Blue Cross. According to the EOB, Associates billed his insurance company $625.00 for a surgical procedure and $210.00 for a medical procedure. These were the same charges that were submitted to his insurance company for the initial September 28, 2017 visit. The EOB stated that his insurance did not cover the surgical procedure and he was responsible to pay Associates $147.72 for the surgical procedure and $30.00 as the co-pay for the medical procedure. CareFirst Blue Cross subsequently informed Relator that Associates had used Procedure Code 31231 for the surgical procedure and Procedure Code 99213-25 for the Medical Service. Procedure Code 99213 is the code to use for an established patient office visit. In Relator's case, Associates billed for an established patient office visit using the 99213 E&M code and for a nasal endoscopy procedure using CPT Code 31231 when only the anterior rhinoscopy was performed, which was reimbursable under the office visit E&M claim only.

34. Because Dr. #1 did not perform a nasal endoscopy during the second visit, Relator called Associates' billing department. When Relator spoke to a billing representative, Relator was told that on the first visit he received a nasal endoscopy and during the follow-up visit he received an anterior rhinoscopy. According to the Associates representative, they were the same type of exams and were coded and billed in the same way.

35. Relator then called CareFirst BlueChoice and he was told that the procedures for the two visits were assigned the same CPT code 31231.

36. Relator received a letter dated November 28, 2017 from Associates that confirmed his telephone conversation with Associates. The letter stated that "the anterior rhinoscopy and the nasal endoscopy are the same type of exams," and "the balance is patient's responsibility."

37. Relator submitted a letter of appeal to CareFirst BlueChoice, stating that "the provider did not perform procedure code 31231." By letter dated December 26, 2017, Relator's appeal was denied, even though Relator had stated "that the provider did not perform procedure code 31231." The CareFirst BlueChoice letter stated: "According to the provider the anterior rhinoscopy and nasal endoscopy are the same type of exam."

38. Relator made further inquiry to Associates regarding the charges for the November 3, 2017 office visit. By letter dated February 28, 2018, the Massachusetts Eye & Ear Service Center confirmed its position. The letter stated: "Your concern about a nasal endoscopy not being done was reviewed by our Coding and Compliance Manager. Per the CPT guide, an anterior rhinoscopy is billed with the same code as a nasal endoscopy (31231). The charges are correct."

39. Relator's medical care is not covered by Medicare or Medicaid, but during the course of his inquiries to Infirmary and Associates to challenge Relator's balance due to Associates, Relator was told by an authorized representative of Infirmary and Associates that Associates bills Medicare in the same way: Defendants thus use CPT code 31231 to seek reimbursement from Medicare for anterior rhinoscopy when nasal endoscopy is not performed.

40. Defendants' practice of billing for a nasal endoscopy using CPT Code 31231 when the physician performed only an anterior rhinoscopy constitutes using a false statement in violation of Medicare and Medicaid billing requirements

## COUNT I

### VIOLATION OF THE FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(A)

41. Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

42. Defendants knowingly presented, or caused to be presented, and continue to present or cause to be presented, false and fraudulent claims for payment or approval to the United States – *i.e.*, the foregoing false and fraudulent claims for payments from Medicare, Medicaid and other federal health care programs – in violation of 31 U.S.C. § 3729(a)(1)(A).

43. Said false and fraudulent claims were presented with Defendants' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

44. The United States relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid for these false and fraudulent claims had it known the falsity of said claims.

45. As a direct and proximate result of the false and fraudulent claims made by Defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus civil penalties up to the maximum permitted by law for each such violation of the False Claims Act.

WHEREFORE, Relator requests that judgment be entered against Defendants in favor of the United States for treble the amount of the United States' damages to be determined at trial,

and all allowable civil penalties, fees, interest and costs under the False Claims Act and for all other and further relief as the Court may deem just and equitable; and an award to Relator of the maximum amount permitted by the False Claims Act under 31 U.S.C. § 3730(d)(1) or (2), plus reasonable expenses incurred, reasonable attorneys' fees and costs.

## COUNT II

## VIOLATION OF THE FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(B)

46. Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

47. Defendants knowingly made, used or caused to be made or used, and continue to make, use and cause to be made or used, false records or false statements material to the foregoing false or fraudulent claims to get the false or fraudulent claims paid and approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

48. Defendants' knowingly false records or false statements were material, and upon information and belief continue to be material, to the false and fraudulent claims for payments they made and continue to make to the United States.

49. The materially false records or false statements that Defendants made or caused to be made are set forth above and include, claims for payment for nasal endoscopies when the treating doctor did not perform a nasal endoscopy.

50. These false records or false statements were made, used or caused to be made or used, and continue to be made, used and caused to be made and used, with Defendants' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

51. As a direct and proximate result of these materially false records or false statements, and the related false or fraudulent claims made by Defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus civil penalties up to the maximum permitted by law for each such violation of the False Claims Act.

WHEREFORE, Relator requests that judgment be entered against Defendants for treble the amount of the United States' damages to be determined at trial, and all allowable civil penalties, fees, interest and costs under the False Claims Act and for all other and further relief as the Court may deem just and equitable; and an award to Relator of the maximum amount permitted by the False Claims Act under 31 U.S.C. § 3730(d)(1) or (2), plus reasonable expenses incurred, reasonable attorneys' fees and costs.

## COUNT III

### MASSACHUSETTS FALSE CLAIMS ACT

52. Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

53. This is a *qui tam* action brought by Plaintiff-Relator on behalf of the Commonwealth of Massachusetts for treble damages and penalties under the Massachusetts False Claims Act, Mass. Gen. Laws Ann. Chap. 12 § 5A, *et seq.*

54. Mass. Gen. Laws Ann. Chap. 12 § 5B, provides liability for any person who:

(1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth;

55. The Commonwealth of Massachusetts, by and through the Massachusetts

14

Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by Defendants in connection therewith.

56. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the Commonwealth of Massachusetts in connection with Defendant's conduct. Compliance with applicable Massachusetts statutes and regulations was also an express condition of payment of claims submitted to the Commonwealth of Massachusetts.

57. Had the Commonwealth of Massachusetts known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

58. As a result of Defendants' violations of Mass. Gen. Laws Ann. Chap. 12 § 5B, the Commonwealth of Massachusetts has been damaged in an amount to be determined at trial.

59. Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations in this Complaint, who has brought this action pursuant to Mass. Gen. Laws Ann. Chap. 12 § 5(c)(2), on behalf of himself and the Commonwealth of Massachusetts.

60. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the Commonwealth of Massachusetts, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following

damages to the UNITED STATES OF AMERICA and THE COMMONWEALTH OF MASSACHUSETTS and against Defendants:

(1) Three times the amount of actual damages which the United States of America and The Commonwealth of Massachusetts have sustained as a result of Defendants' conduct;

(2) A civil penalty up to the maximum permitted by law for each false claim which Defendants caused to be presented to the United States and The Commonwealth of Massachusetts;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To Plaintiff-Relator:

(1) The maximum amount allowed pursuant to 31 U.S.C. § 3730 and Mass. Gen. Laws Ann. Chap. 12, §5F and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3) An award of reasonable attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

Dated: April 6, 2018         Respectfully submitted,

Ilyas J. Rona, Esq. (BBO#642964)
Royston H. Delaney, Esq. (BBO#655666)
**RORY DELANEY, ESQ., LLC**
50 Congress Street, Suite 600
Boston, MA 02109
(857) 498-0384 (Telephone)
rory@rorydelaney.com
ijr@mrdklaw.com

David A. Koenigsberg*
New York Bar No. 1864487
**MENZ BONNER KOMAR & KOENIGSBERG LLP**
One North Lexington Ave., Suite 1550
White Plains, NY 10601
(914) 949-0222 (Telephone)

16

Jason L. Solotaroff*
New York Bar No. 2429058
**GISKAN SOLOTAROFF & ANDERSON LLP**
217 Centre Street, 6th Floor
New York, NY 10013
(646) 964-9640 (Telephone)
jsolotaroff@gslawny.com

*Attorneys for the Plaintiff-Relator*

*Not admitted in Massachusetts